**LEVI & KORSINSKY, LLP**
ROSEMARY M. RIVAS (State Bar No. 209147)
rrivas@zlk.com
QUENTIN A. ROBERTS (State Bar No. 306687)
qroberts@zlk.com
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
COURTNEY E. MACCARONE (*pro hac vice* to be filed)
cmaccarone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510

*Attorneys for Plaintiff Barbara Vance-Guerbe*

### UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BARBARA VANCE-GUERBE, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> FACEBOOK, INC. and CAMBRIDGE ANALYTICA LLC, <br><br> Defendants. | Case No. 3:18-cv-02987 <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Barbara Vance-Guerbe ("Plaintiff"), by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself, which are based on personal knowledge, against defendants Facebook, Inc. ("Facebook") and Cambridge Analytica LLC ("Cambridge" and with Facebook, "Defendants").

## NATURE OF THE ACTION

1. Facebook is currently the world's largest social networking platform, with about 2.2 billion active users worldwide and approximately 214 million users in the United States.[1]

2. The Facebook platform allows users to create online profiles with personalized content such as name, gender, e-mail address, birthday, interests, relationship status, education, work, political, or religious views. Users interact with each other or the platform in a variety of ways, including by posting comments, sharing photos, videos, or news articles, chatting, using applications ("app" or "apps"), playing games, taking personality quizzes, or "liking" content.

3. Through this platform, Facebook has become one of the world's largest repositories of personal data, with an ever growing range of potential uses. The data has great value to researchers, as well as advertisers and political campaigns.

4. Facebook promises its users that they have control over their sensitive personal information. For example, in a keynote speech given in 2014, Mark Zuckerberg, CEO of Facebook, stated, "[i]n every single thing we do, we always put people first." Zuckerberg promised that Facebook gives people control over how they share their information.[2] Moreover, Facebook directly assures its users that they have control over their information. Specifically, the Facebook Terms of Service state: "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings."[3]

---

[1] *See* https://www.statista.com/statistics/398136/us-facebook-user-age-groups/ (last accessed May 2, 2018).
[2] *See* https://singjupost.com/facebooks-ceo-mark-zuckerberg-f8-2014-keynote-full-transcript/3/?print=print (last accessed May 4, 2018)
[3] *See* https://www.facebook.com/legal/terms  (last accessed May 2, 2018).

5. However, instead of safeguarding its user's sensitive information, Facebook instead provides it to third party application developers without user consent.

6. As first reported by *The Guardian* on March 17, 2018, Facebook allowed Cambridge, a company owned by the hedge fund billionaire Robert Mercer and headed at the time by Trump's key advisor Steve Bannon, to illegally harvest the personal information of non-consenting Facebook users through one such third-party app called, "ThisIsYourDigitalLife."[4]  Billed as a research app used by psychologists and designed by a Cambridge academic, it promised to help users better understand their own personalities.

7. Approximately 270,000 people downloaded the app, which gave Cambridge access to their data.  However, Cambridge also illegally harvested the data of all of those individuals' non-consenting Facebook friends.  It has been estimated that up to 87 million people, mostly in the United States, were improperly accessed by Cambridge.  Plaintiff is one of the reportedly 87 million people affected.

8. Specifically, Cambridge improperly collected the data by claiming it was for academic purposes.  However, a whistleblower revealed that the personal information was taken in order "to build a system that could profile individual US voters, in order to target them with personalized political advertisements."[5]

9. Facebook allowed this to happen.  A former Facebook manager recently revealed that he found Facebook's lack of control over the data given to outside developers "utterly horrifying" and had warned executives that its lax approach to data protection risked a major breach.[6]  However, his warnings were ignored.  Facebook knew this improper data aggregation was occurring and failed to stop it, or actively avoided discovering such knowledge in order to profess supposed ignorance.

10. Only after public outcry has Facebook proposed remedial measures.  Yet, these proposed measures remain inadequate.  None of the measures adequately remedy or prevent the

---

[4] *See* https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election (Last accessed May 4, 2018).
[5] *Id.*
[6] *See* https://www.theguardian.com/technology/2018/mar/24/cambridge-analytica-week-that-shattered-facebook-privacy (last accessed May 2, 2018).

improper and illegal conduct alleged. Users' data remains dangerously unprotected and open to further abuse by third-party application developers and anyone to whom these third party developers distribute the users' data.

11. Facebook has a history of ignoring the privacy of its users. In a 2011 decree entered by the Federal Trade Commission, Facebook was found to have ignored its users' privacy preferences and shared their data without permission. At the time, Facebook acknowledged that it did not properly police when third-party apps accessed user data. As part of the consent decree, Facebook was supposed to take broad remedial measures to prevent the abuse of users' information and to disclose to them how it was being shared.

12. Plaintiff files this action seeking to change Facebook's business practices relating to data retention and collection, for breach of contract, and for violations of federal and state law.

**PARTIES**

13. Plaintiff Barbara Vance-Guerbe is a resident and citizen of Flint, Michigan. On or about April 10, 2018, Plaintiff received notification from Facebook stating that while she did not personally log into "ThisIsYourDigitalLife," a friend of hers did, and as a result, her data was shared with Cambridge.

14. Defendant Facebook, Inc. is a Delaware corporation, headquartered in Menlo Park, CA.

15. Defendant Cambridge Analytica LLC is a Delaware limited liability company with headquarters in New York, NY.

**JURISDICTION AND VENUE**

16. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

17. This Court has personal jurisdiction over Facebook because Facebook owns and operates a business that is headquartered in California, and because it conducts substantial business throughout California. This Court has personal jurisdiction over Defendant Cambridge because it

conducts business in California, and the acts and practices challenged herein occurred or were otherwise facilitated in California.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Facebook is headquartered in this District, and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Venue is also proper because Facebook's terms of service require that claims be resolved "exclusively in the U.S. District Court for the Northern District of California."

**INTRADISTRICT ASSIGNMENT**

19. Pursuant to Civil L.R. 3-2(c), this civil action should be assigned to the San Francisco Division, because a substantial part of the events or omissions giving rise to the claim occurred in the county of San Mateo County, where Facebook is headquartered.

**FACTUAL ALLEGATIONS**

**A.  Facebook's Data Aggregation**

20. Facebook is the world's largest social media company with over 2 billion monthly users.[7]

21. Through this platform, Facebook has become one of the world's largest repositories of personal data, with an evergrowing range of potential uses.

22. This data includes, but is not limited to: name, gender, e-mail address, birthday, family connections, education, interests, religious and political views, dates and times of active Facebook sessions, dates, times, and titles of any advertisements that were clicked by the Facebook user, communications with other Facebook users through the integrated "Messenger" app, the user's inbox, attendance at events, stored credit card information, a list of IP addresses where the user logged into and out of his or her account, relationship status, and posts or pages the user has "liked" ("Personal Information"). Using this data, Facebook may suggest connections, guide the presentation of information on the platform, and publish targeted ads.

23. The most revealing data from these profiles are drawn from observations of the things users "like" on Facebook (*i.e.*, the instances in which they click a "like" button in association with posts or pages on the Facebook platform). According to a 2013 study by researchers at Cambridge

---

[7] *See* https://techcrunch.com/2017/06/27/facebook-2-billion-users/ (last accessed May 2. 2018).

University, an analysis of Facebook "likes" could predict sexual orientation with 88% accuracy, a user's skin color with 95% accuracy, and whether the user is a Democrat or Republican with 85% accuracy.[8] A follow-up study found that by analyzing "likes," a computer can determine how artistic, shy, or cooperative a person is.[9]

24. Facebook has long understood, but has never adequately disclosed to users, that the data it collects through its platform allows it "to figure out your personal psychological susceptibilities and then charge advertisers to exploit them."[10]

25. Facebook also regularly experiments on users without their consent. For example, in 2012, Facebook secretly manipulated the news feeds of 1.9 million users during the 2012 United States congressional elections and found that showing more hard news instead of personal posts increased civic engagement and voter turnout.[11]

### B. Facebook Profits Off of Data Aggregation

26. When Facebook introduced its ad platform in 2007, advertisers could target people using information the users voluntarily provided to Facebook.[12] For example, a typical target audience might have been individuals who live in New York City, studied psychology in college, and in the age range of 18-24 years old.

27. In 2009, Facebook added a "like" button on posts in their newsfeed, which refined the list of interests that advertisers could target. Facebook also introduced ways for advertisers to target friends of those who had interacted with their brands.[13]

---

[8] *See* http://www.bbc.com/news/technology-21699305 (last accessed May 2, 2018).
[9] *See* http://www.nybooks.com/daily/2018/04/12/reining-in-big-datas-robber-barons/ (last accessed May 2, 2018).
[10] *Id.*
[11] *See* https://www.motherjones.com/politics/2014/10/can-voting-facebook-button-improve-voter-turnout/ (last accessed May 2, 2018).
[12] *See* https://www.nytimes.com/interactive/2018/04/11/technology/facebook-sells-ads-life-details.html (last accessed May 2, 2018).
[13] *Id.*

28. Three years later, Facebook introduced a new feature that allowed companies to upload lists of people to target directly. This could include a company's own customer list, or lists of consumers bought from third-party marketing firms known as data brokers.[14]

29. Facebook has expanded its ad apparatus over the last decade by accumulating massive amounts of details about its users over time and turning those details into targetable data points.

30. For example, in 2014, Facebook's ad program evolved to allow advertisers to pinpoint people even more precisely than ever before. Facebook incorporated users' Internet browsing history into its ad-targeting platform.[15] It also started allowing advertisers to target people based on "Ethnic Affinity," which can be used as a proxy for race.[16]

31. Facebook's data collection has generated extraordinary wealth for the company. In fact, the majority of Facebook's revenue comes from targeted ads. In 2017, Facebook generated $39.94 billion ad revenues, constituting 98 percent of Facebook's revenue.[17]

32. Accordingly, Facebook's business model creates a tension between advertisers and third-parties that wish to exploit Facebook data and the privacy concerns of its users.

**C. Millions of Users' Personal Information Is Harvested by Cambridge**

33. Cambridge is a political consulting firm that claims to offer tools to identify American voters and influence their behavior. Cambridge's investors have included Trump benefactor Robert Mercer and former White House aide Steve Bannon.[18]

34. Traditional analytics firms use voting records and consumer purchase histories to predict political beliefs and social behavior.[19] However, these records are not helpful for figuring out the psychological traits that Cambridge believed would "provide uniquely powerful means of

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *See* https://www.statista.com/statistics/271258/facebooks-advertising-revenue-worldwide/ (last accessed May 5, 2018).
[18] *See* https://www.usatoday.com/story/news/world/2018/03/22/cambridge-analytica-profile/437210002/ (last accessed May 5, 2018).
[19] *See* https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html (last accessed May 5, 2018).

designing political messages."[20]  Such traits include whether a user is a "neurotic introvert," "religious extrovert," "fair-minded liberal," or "fan of the occult."[21]

35.     Since Cambridge did not have this data, it created the Facebook app, "ThisIsYourDigitalLife," which allowed it to improperly and illegally gather personal data from approximately 87 million Facebook users.  Cambridge collected this data in order "to build a system that could profile individual US voters, in order to target them with personalized political advertisements."[22]  Essentially, Cambridge used Facebook data to construct psychographic profiles of millions of people without their consent or knowledge.

36.     According to whistleblower Christopher Wylie, Cambridge "built models to exploit what [it] knew about [Facebook users] and target their inner demons.  That was the basis the entire company was built on."[23]

37.     Cambridge used patent misrepresentations in order to obtain Plaintiff's and Class members' data through the "ThisIsYourDigitalLife" app, representing that the app sought data for academic research purposes—when in fact the app harvested data from the *friends* of the app's users (without their consent) and expressly for political targeting purposes.

38.     After Trump's presidential victory in 2016, Cambridge's CEO, Alexander Nix, boasted, "We did all the research, all the data, all the analytics, all the targeting, we ran all the digital campaign, the television campaign and our data informed all the strategy."[24]

39.     Facebook became aware that Cambridge misused Facebook user's personal data in 2015.  Facebook's lawyers sent a letter to Cambridge in August of 2016 stating that they knew Cambridge still had the data from its harvesting program and asked Cambridge to delete it.  Facebook also asked Cambridge to sign a simple certification that the data had been deleted, however, the certification did not require notarization or any other legal proof of deletion.  Facebook accepted a

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *See* https://www.theguardian.com/news/2018/mar/17/cambridge-analytica-facebook-influence-us-election.(last accessed May 5, 2018).
[24] *See* https://www.npr.org/sections/thetwo-way/2018/03/21/595470164/in-hidden-camera-expose-cambridge-analytica-executives-boast-of-role-in-trump-wi (last accessed May 5, 2018).

letter back from Cambridge that it had done so. Facebook did not follow up or conduct a forensic audit. It also did not inform regulators or Facebook users about the data.

40. A month after *The Guardian* story broke, Mark Zuckerberg spoke publicly about the events. In his testimony before Congress on April 11, 2018, Mr. Zuckerberg acknowledged Facebook's negligence. He stated, "it's clear now that we didn't do enough to prevent these tools from being used for harm as well. That goes for fake news, foreign interference in elections, and hate speech, as well as developers and data privacy. We didn't take a broad enough view of our responsibility, and that was a big mistake."[25]

41. Mr. Zuckerberg made other admissions about Facebook's failure to protect user's Personal Information. For example, he stated, "This was a major breach of trust, and I'm really sorry that this happened. You know, we have a basic responsibility to protect people's data and if we can't do that then we don't deserve to have the opportunity to serve people."[26]

42. Had Facebook implemented the necessary and required privacy reforms, the misconduct committed by Cambridge would not have occurred. As a direct and proximate result of Defendants' actions and omissions, Plaintiff and similarly situated consumers have been harmed, injured, and damaged. Plaintiff and members of the Class have been injured through the unauthorized harvesting and use of their Personal Information, as well as the multitude of harms that are likely to follow from such access and use.

## CLASS ALLEGATIONS

43. Pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff, individually and on behalf of all others similarly situated, brings this lawsuit on behalf of herself and as a class action on behalf of the following class:

> All persons over the age of 18 who registered for Facebook accounts in the United States and whose Personal Information was obtained from Facebook by Cambridge without authorization or in excess of authorization.

---

[25] *See* https://www.usatoday.com/story/tech/news/2018/04/09/read-facebook-ceo-mark-zuckerbergs-planned-testimony-before-congress/499097002/ (last accessed May 5, 2018).

[26] *See* http://money.cnn.com/2018/03/21/technology/mark-zuckerberg-apology/index.html (last accessed May 5, 2018).

44. Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, officers and directors, any entity in which Defendants have a controlling interest, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

45. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that joinder is impractical. The Class consists of millions of members. The names and addresses of Class members are identifiable through documents maintained by Defendants.

46. <u>Commonality</u>. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are numerous questions of law and fact common to the Class, which predominate over questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

　　a) Whether Facebook represented that it would safeguard Plaintiff's and Class members' Personal Information and not disclose it without consent;

　　b) Whether Cambridge improperly obtained Plaintiff's and Class members' Personal Information without authorization or in excess of any authorization;

　　c) Whether Facebook was aware of Cambridge's improper collection of Plaintiff's and Class members' Personal Information;

　　d) Whether Defendants owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

　　e) Whether Defendants breached a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, safeguarding, and/or obtaining their Personal Information;

　　f) Whether Facebook was negligent in failing to exercise due care in collecting, storing, and/or safeguarding Plaintiff's and Class members' Personal Information;

　　g) Whether Defendants violated the Stored Communications Act, 18 U.S.C. §§ 2702(a);

　　h) Whether Defendants' conduct was an unlawful or unfair business practice under Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

i) Whether Facebook breached a contract between Facebook and Plaintiff and Class members;

j) Whether Facebook violated the duty to act fairly and in good faith;

k) Whether Defendants invaded Plaintiff's and Class members' privacy;

l) Whether Plaintiff and the Class are entitled to equitable relief, including, but not limited to, injunctive relief and restitution; and

m) Whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief.

47. <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other Class members were injured through substantially uniform misconduct by Defendants. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, and there are no defenses that are unique to Plaintiff. The claims of Plaintiff and those of other Class members arise from the same operative facts and are based on the same legal theories.

48. <u>Adequacy</u>. Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the other Class members she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and Plaintiff will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

49. <u>Superiority of Class Action</u>. Fed. R. Civ. P. 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendants' wrongful conduct may be too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. The prosecution of separate actions by members of the Class would create a risk of

establishing inconsistent rulings and/or incompatible standards of conduct for Defendants. Additionally, individual actions may be dispositive of the interests of the Class, although certain Class members are not parties to such actions.

50. <u>Injunctive and Declaratory Relief</u>. Fed. R. Civ. P. 23(b)(2). The conduct of Defendant is generally applicable to the Class as a whole and Plaintiff seeks equitable remedies with respect to the Class as a whole. As such, the systematic policies and practices of Defendants make declaratory or equitable relief with respect to the Class as a whole appropriate.

51. <u>Issue Certification</u>. Fed. R. Civ. P. 23(c)(4). In the alternative, the common questions of law and fact, set forth in Paragraph 46, are appropriate for issue certification on behalf of the proposed Class.

**COUNT I**
**Stored Communications Act**
**(Against Defendants Facebook and Cambridge)**

52. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

53. Plaintiff, individually and on behalf of the members of the Class, asserts violations of the Stored Communications Act, 18 U.S.C. §§ 2702(a), for Defendants' unlawful gathering and/or disclosure of the content of Plaintiff's and Class members' communications to third parties.

54. The Stored Communications Act ("SCA") prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage."

55. The SCA defines "electronic storage" as "any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and any storage of such communication by an electronic communication service for purposes of backup protection of such communication."

56. The servers Facebook uses to provide its electronic communications service to Facebook users are a "facility" within the meaning of the SCA.

57. Defendants are "persons" within the meaning of the SCA.

58. Facebook's provision of users' electronic communications, or information derived therefrom, to third parties exceeded authorization.

59. Cambridge's obtaining users' electronic communications, or information derived therefrom, exceeded authorization.

60. Because of the architecture of Facebook's servers, the sharing of information among Facebook users results in and constitutes interstate data transmissions.

61. Pursuant to 18 U.S.C. § 2707(c), Plaintiff and Class members are entitled to minimum statutory damages of $1,000 per person, punitive damages, costs, and reasonable attorneys' fees.

**COUNT II**
**Violations of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.*
**(Against Defendants Facebook and Cambridge)**

62. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

63. Defendants' conduct as alleged herein constitutes unfair, unlawful, or fraudulent business acts or practices as proscribed by Section 17200, *et seq.*, of the California Business & Professions Code ("UCL").

64. Defendants' conduct constitutes "unlawful" business acts or practices by virtue of Defendant's violation of the Stored Communications Act, 18 U.S.C. §§ 2701, *et seq.*

65. Plaintiff and Class members have an interest in controlling the disposition and dissemination of their private data. Contrary to Plaintiff's and Class members' interests, each Defendant exercised control over the content of Plaintiff's and Class members' personal data, exploiting it for sale and profit without consent. As a result, Defendants' conduct constitutes "unfair" business acts or practices.

66. Plaintiff and Class members reasonably relied on representations from Facebook that third-parties could not access personal data absent consent (including representations in Facebook's Terms of Service). Similarly, Cambridge used patent misrepresentations in order to obtain Plaintiff's and Class members' data through the "thisisyourdigitallife" app, representing that the app sought data for academic research purposes—when in fact the app harvested data (1) from the *friends* of the app's

users (without their consent) and (2) expressly for political targeting purposes. All of the above-described activity constitutes "fraudulent" business acts or practices.

67. Plaintiff and Class members have suffered injury in fact and lost money or property as a result of Defendants' business acts or practices.

68. Plaintiff and Class members seek an order to enjoin Defendants from such unlawful, unfair, and fraudulent business acts or practices, and to restore to Plaintiff and Class members their interest in money or property that may have been acquired by Defendants by means of the unfair competition.

**COUNT III**
**Breach of Contract**
**(Against Defendant Facebook)**

69. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

70. In order to register as users of Facebook, Plaintiff and the Class were required to, and did, affirmatively assent to its terms and conditions.

71. The terms and conditions constitute a valid and enforceable contract between Plaintiff and the Class on the one hand, and Facebook on the other.

72. Under the terms and conditions, Plaintiff and the Class transmitted sensitive Personal Information, including personally identifiable information, to Facebook in exchange for use of Facebook and Facebook's promise that it would not share that Personal Information with third-parties, including but not limited, to advertisers, without their authorization.

73. Specifically, the terms and conditions provides that "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings." Facebook breached this provision as alleged herein.

74. Facebook users effectively pay for Facebook's services through their provision of their sensitive Personal Information into Facebook's safekeeping.

75. Facebook's users exchange something valuable, providing Facebook with access to their sensitive and unique Personal Information, and in return, Facebook's users obtain access to Facebook's services.

76. A material consideration for Plaintiff's transmission of sensitive Personal Information to Facebook is Facebook's promise to safeguard their sensitive Personal Information.

77. In particular, Facebook promised that any Personal Information submitted by its users would only be disclosed to other users and third-parties in the specific ways and circumstances set forth in Facebook's privacy policy and with user consent.

78. Facebook materially breached the terms and conditions through its unlawful conduct alleged herein, including its disclosure of Plaintiff's and Class members' sensitive Personal Information to Cambridge.

79. As a result of Facebook's misconduct and breach of the terms and conditions described herein, Plaintiff and the Class suffered damages.

80. Plaintiff and Class members did not receive the benefit of the bargain for which they contracted and their sensitive and unique Personal Information has ascertainable value to be proven at trial.

81. Plaintiff and each Class member gave up something of value, their sensitive Personal Information, in exchange for access to Facebook and Facebook's privacy promises.

82. Facebook materially breached the terms and conditions by violating its privacy terms, thus depriving Plaintiff and Class members the benefit of the bargain.

83. Thus, Plaintiff's and Class members' actual and appreciable damages consist of the value of their sensitive Personal Information that Facebook wrongfully shared with Cambridge through Facebook's unauthorized consent, neglect or recklessness.

84. The sensitive Personal Information captured by Facebook and disclosed to Cambridge was an egregious breach of trust between Facebook, Plaintiff and Class members.

85. Facebook's breach was exacerbated by Cambridge's efforts to illegally, deceptively, and improperly influence the 2016 Presidential election.

86. Plaintiff seeks damages based on Facebook's breach of the terms and conditions and disgorgement from Facebook of the proceeds that Facebook wrongfully obtained by breaching the terms and conditions.

87. Plaintiff also seeks damages which flow directly from Facebook allowing Cambridge to improperly influence the 2016 Presidential election.

88. Plaintiff and the Class are entitled to damages, injunctive relief, and equitable relief to remedy the above described misconduct.

## COUNT IV
### Breach of Covenant of Good Faith and Fair Dealing
### (Against Facebook)

89. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

90. In every contract or agreement there is an implied promise of good faith and fair dealing. This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

91. Facebook violated the duty to act fairly and in good faith. It entered into a contract with Plaintiff and Class members, which includes terms covering privacy and limiting the use and sharing of Plaintiff's and Class members' Personal Information.

92. Plaintiff and Class members bargained for an adequate level of security and reasonable care with respect to the use, storage, and sharing of their Personal Information.

93. Plaintiff and Class members performed their duties under the contract and all the conditions required for Facebook's performance occurred.

94. Facebook violated the terms of the contract by knowingly sharing Plaintiff's and Class members' Personal Information with Cambridge for unauthorized purposes, without first obtaining Plaintiff's and Class members' consent or providing them notice of such disclosure.

95. Facebook unfairly interfered with Plaintiff's and Class members' right to receive the benefit of the contract by failing to take appropriate measures to protect Plaintiff's and Class members' Personal Information in accordance with Facebook's promises and representations.

96. Plaintiff and Class members suffered actual damages, which include but are not limited to, lost benefit of their bargain with Facebook; exposure to a heightened, imminent risk of fraud; and loss of the value of their Personal Information.

## COUNT V
### Invasion of Privacy
### (Against Facebook and Cambridge)

97. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

98. Article 1, Section 1 of the California Constitution expressly provides a right to privacy. This right is enforced through the intrusion tort of invasion of privacy.

99. Under the terms and conditions, Plaintiff and the Class transmitted sensitive Personal Information to Facebook in exchange for use of the Facebook platform and Facebook's promise that it would not share that Personal Information with third-parties, including but not limited to advertisers, without their authorization.

100. Specifically, the terms provide that, "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings."

101. Facebook's users reasonably believed that they could use the Facebook platform without their Personal Information being released to third-parties without their permission or notice.

102. Plaintiff and the Class members have an interest in preventing the unauthorized disclosure and/or misuse of their Personal Information and in conducting their personal activities without intrusion or interference.  This includes the right to not have their Personal Information stolen and used against them.

103. Defendants intentionally intruded on Plaintiff's and Class members' private place, conversation, matter, seclusion, or solitude, without consent.

104. Defendants' intrusive conduct was and is highly objectionable to a reasonable person and constitutes an egregious intrusion on Plaintiff's and Class members' rights to privacy.

105. Plaintiff and Class members were harmed by Facebook's and Cambridge's invasion of their privacy rights.

## COUNT VI
### Negligence
### (Against Facebook)

106. Plaintiff re-alleges and incorporates by reference the allegations contained in the paragraphs above as if fully set forth herein.

107. In collecting the Personal Information of its users, Facebook owed Plaintiff and members of the Class a duty to exercise reasonable care in safeguarding and protecting that Personal Information. This duty included, among other things, maintaining and testing Facebook security systems and taking other reasonable security measures to protect and adequately secure the Personal Information of Plaintiff and the Class from unauthorized access and use.

108. Facebook knew that the Personal Information of Plaintiff and the Class was personal and sensitive information that is valuable.

109. By being entrusted by Plaintiff and the Class to safeguard their Personal Information, Facebook had a special relationship with Plaintiff and the Class. Plaintiff and the Class signed up for Facebook's services and agreed to provide their Personal Information with the understanding that Facebook would take appropriate measures to protect it, and would inform Plaintiff and the Class of any breaches or other security concerns that might call for action by Plaintiff and the Class. Facebook failed to do so, and in a breach of its duty of care, allowed Cambridge to without notice or permission, obtain Plaintiff's and Class members' Personal Information.

110. Facebook breached its duties by failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class members' Personal Information, and by allowing access to that Personal Information without authorization.

111. Facebook also breached its duty to timely disclose that Plaintiff's and the other Class members' Personal Information had been, or was reasonably believed to have been, improperly obtained.

112. But for Facebook's wrongful and negligent breach of its duties owed to Plaintiff and the Class, their Personal Information would not have been improperly disclosed to Cambridge. Facebook's negligence was a direct and legal cause of the theft of the Personal Information of Plaintiff and the Class and all resulting damages.

113. The injury and harm suffered by Plaintiff and Class members was the reasonably foreseeable result of Facebook's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class members' Personal Information.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.  An order certifying that this Action may be maintained as a class action, that Plaintiff be appointed as the Class Representative, and Plaintiff's counsel be appointed Class Counsel;

B.  A judgment awarding Plaintiff and all members of the Class damages as alleged above incurred by Plaintiff and Class members as a result of Defendants' unlawful, deceptive, and unfair practices described herein;

C.  A judgment awarding Plaintiff and all members of the Class restitution or other equitable relief;

D.  Preliminary and permanent injunctive relief against Defendants;

E.  A judgment awarding Plaintiff the costs of suit, including reasonable attorneys' fees, and pre and post-judgment interest; and

F.  Such other and further relief as may be deemed necessary or appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: May 21, 2018

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosemary M. Rivas*
ROSEMARY M. RIVAS (State Bar No. 209147)
rrivas@zlk.com
QUENTIN A. ROBERTS (State Bar No. 306687)
qroberts@zlk.com
44 Montgomery Street, Suite 650
San Francisco, California 94104
Telephone: (415) 291-2420
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
COURTNEY E. MACCARONE (*pro hac vice* to be filed)
cmaccarone@zlk.com
30 Broad Street, 24th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (866) 367-6510

*Attorneys for Plaintiff Barbara Vance-Guerbe*